No. 24-179

## IN THE U.S. COURT OF APPEALS FOR THE NINTH CIRCUIT

STATE OF ALASKA DEPARTMENT OF FISH AND GAME,

*Plaintiff - Appellant*,

v.

FEDERAL SUBSISTENCE BOARD; et al.,

*Defendants - Appellees*,

and

ORGANIZED VILLAGE OF KAKE,

*Intervenor-Defendant - Appellee.*

On appeal from the U.S. District Court
for the District of Alaska, Anchorage
No. 3:20-cv-00195-SLG
Hon. Sharon L. Gleason

## OPPOSITION TO MOTION FOR ATTORNEYS' FEES

Laura Wolff
Assistant Attorney General
Department of Law
1031 West Fourth Ave, Suite 200
Anchorage, AK 99501
(907) 269-6612
laura.wolff@alaska.gov

*Attorney for Appellant*
STATE OF ALASKA

The State opposes intervenor-defendant Village of Kake's motion for attorneys' fees in this appeal because 16 U.S.C. § 3117 does not authorize them. That provision provides that aggrieved local persons and organizations may file a complaint against the government responsible for providing a subsistence priority when that government fails to provide a priority. And if the plaintiffs prevail in their suit, they may collect attorneys' fees. Section 3117 is irrelevant to this suit in which the federal government *did* provide a priority, the State brought suit against the federal government because the State believed the federal government acted outside its statutory authority, the Village of Kake intervened on behalf of the federal government as an intervenor-defendant, and the State ultimately lost.

## BACKGROUND

In 2020, the Federal Subsistence Board opened an emergency hunt for the Village of Kake. *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd.*, 62 F.4th 1177, 1179 (9th Cir. 2023). The State sued the Federal Subsistence Board, arguing among other things that ANILCA does not authorize opening emergency hunts outside state hunting seasons. *Id.* at 1179–80. The Tribe intervened. *Id.* at 1181. The district court agreed with the Board and Tribe that the issue was moot because the hunt had already occurred and dismissed the suit. *Id.* at 1181. This Court reversed, determining that whether the Board may open emergency hunts is an issue capable of repetition and thus excepted from mootness, and remanded to

the district court to decide the merits. *Id.* at 1181–83. On remand, the district court ruled in favor of the Board and Tribe. 700 F. Supp. 3d 775 (D. Alaska 2023). The State appealed. 139 F.4th 773 (9th Cir. 2025). And this Court affirmed the district court's decision. *Id.* at 782–86.

The Tribe did not seek attorneys' fees below. The Tribe raises a novel issue in its appellate motion, seeking attorneys' fees and citing 16 U.S.C. § 3117. That section has never been wielded as the Tribe seeks here. For good reason. The Tribe's interpretation is atextual, inconsistent with congressional intent, and ignores the canons that require a clear statement for shifting attorneys' fees and abrogating sovereign immunity.

## ARGUMENT

### I. The judicial enforcement provision in Title VIII does not apply and therefore does not authorize awarding any attorney fees.

Attorneys' fees may not be granted "without clear statutory authorization." *Hardisty v. Astrue*, 592 F.3d 1072, 1076 (9th Cir. 2010). Section 3117 of ANILCA does not clearly or even ambiguously authorize attorneys' fees when the federal government provides for a priority and the State sues the federal government on the theory that the federal government exceeded its authority under ANILCA. In citing the judicial enforcement provision in Title VIII, the Tribe omits the relevant text of the statute. And this Court "begin[s] with the text of the statute." *Id.*

That text forecloses the Tribe's argument. Section 3117 reads in full, with bold added for clarification:

(a) **Local residents and other persons and organizations aggrieved by a failure of** the State or **the Federal Government to provide for the priority** for subsistence uses set forth in section 3114 of this title (or with respect to the State as set forth in a State law of general applicability if the State has fulfilled the requirements of section 3115(d) of this title) **may,** upon exhaustion of any State or Federal (as appropriate) administrative remedies which may be available, **file a civil action** in the United States District Court for the District of Alaska **to require such actions to be taken as are necessary to provide for the priority.** In a civil action filed against the State, the Secretary may be joined as a party to such action. The court may grant preliminary injunctive relief in any civil action if the granting of such relief is appropriate under the facts upon which the action is based. No order granting preliminary relief shall be issued until after an opportunity for hearing. In a civil action filed against the State, the court shall provide relief, other than preliminary relief, by directing the State to submit regulations which satisfy the requirements of section 3114 of this title; when approved by the court, such regulations shall be incorporated as part of the final judicial order, and such order shall be valid only for such period of time as normally provided by State law for the regulations at issue. **Local residents and other persons and organizations who are prevailing parties in an action filed pursuant to this section shall be awarded their costs and attorney's fees.**

(b) [repealed provision about expedition]

(c) **This section is the sole Federal judicial remedy created by this subchapter for local residents and other residents who, and organizations which, are aggrieved by a failure of the State to provide for the priority of subsistence uses set forth in section 3114 of this title.**

In other words, when the governmental entity tasked with providing a priority fails to do so, aggrieved local residents and organizations may use § 3117 to sue, and

seek attorneys' fees if they prevail. That is what local subsistence users did when the State was responsible for providing a priority (before Alaska's Supreme Court ruled it unconstitutional to provide a priority based on rural residency). *See, e.g.*, *Kenaitze Indian Tribe v. State of Alaska*, 860 F.2d 312, 314 (9th Cir. 1988) ("Section 3117 provides the jurisdictional basis for this lawsuit."); *Bobby v. State of Alaska*, 718 F. Supp. 764, 770–71 (D. Alaska 1989) (using § 3117 to review sufficiency of state regulation in providing for priority for local residents). And that is what local subsistence users did when the federal government became responsible for providing a priority. *See, e.g., Ninilchik Traditional Council v. United States*, 227 F.3d 1186 (9th Cir. 2000) (using § 3117 to sue the Federal Subsistence Board, alleging that antler restriction contravened the rural subsistence priority).

Section 3117 does not apply here.

First, that judicial enforcement provision applies only when rural subsistence users bring suit (i.e., when they are plaintiffs). The section allows for attorney's fees when "local residents and other persons and organizations . . . are prevailing parties in an action filed pursuant to this section." 16 U.S.C. § 3117. And this section applies when local residents "file a civil action." *Id.* If Congress intended defendants or intervenors to recover attorneys' fees, it would have said so. *Cf.* 15 U.S.C. § 77ooo (permitting court to "assess reasonable costs, including reasonable

5

attorney's fees, against any party litigant" in such trust indenture suits); Cal. Gov't Code § 16645.8 ("A prevailing taxpayer [plaintiff-] intervenor who makes a substantial contribution to an action under this section is entitled to recover reasonable attorney's fees and costs."). Congress said no such thing. It said that local subsistence users, when they bring an action (i.e., when they are plaintiffs) and prevail, shall recover attorneys' fees. 16 U.S.C. § 3117.

This judicial enforcement provision therefore falls squarely in the category of statutes permitting recovery of attorney's fees for plaintiffs only, not defendants.[1] Mot. for Fees at 5 (Dkt. 55). There is no ambiguity as to who can collect fees. And even if there were, ambiguity is insufficient to override the American rule on attorneys' fees. *See Hardisty*, 592 F.3d at 1076.

Notably, in cases such as *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412 (1978)—on which the Tribe relies for the proposition that some fee shifting statutes are flexible, giving courts discretion to award attorney's fees to either plaintiffs or defendants (Mot. at 5)—there is a different standard for awarding fees to prevailing defendants. Defendants must show that the plaintiff's action "was frivolous, unreasonable, or without

---

[1]     *E.g.*, 18 U.S.C. § 1964 (allowing private *plaintiffs* to recover fees in RICO suits: "Any person injured in his business or property [by a RICO violation] may sue and recover [treble damages] including a reasonable attorney's fee").

foundation." *Id.* at 421. That is not the case here. Rather, as this Court already ruled, "Alaska's claim "raise[d] a question of first impression . . . requir[ing] resolution of complicated issues of statutory interpretation." 62 F. 4th at 1183.

Regardless of any higher standard for prevailing defendants, § 3117 does not permit awarding fees to defendants. Rather, the provision applies when local subsistence users sue (i.e., when they are plaintiffs). Here, the *State*—not the Tribe—was the plaintiff. The Tribe did not file a lawsuit under § 3117 or any other basis, put the State on notice that it was seeking attorneys' fees, and then later seek to recoup those fees. Instead, it intervened on behalf of the United States as a defendant-intervenor.

Second, the judicial enforcement provision applies only when the government responsible for providing a priority failed to do so. It applies when subsistence users are "aggrieved by a failure of the State or the Federal Government to provide for the priority for subsistence uses." 16 U.S.C. § 3117. This provision is drafted to authorize suit against the State or the federal government because Congress contemplated that both the State and the federal government would be responsible for effectuating the rural subsistence priority. Importantly, the judicial enforcement provision applies against the State only "if the State has fulfilled the requirements of section 3115(d) of [Title VIII]." *Id.* Section 3115(d) contemplates the State providing "for the definition, preference,

7

and participation [of regional committees]." Indeed, Congress discussed how § 3117 "establishes a private right of action to enable any aggrieved local resident, person or organization to file a civil action" in the district court in Alaska "to compel either the State or the Federal government to properly discharge their respective responsibilities under section 804 [3114]." 126 Cong. Rec. S31109 (Dec. 1, 1980).

Once Alaska stopped implementing the rural subsistence preference,[2] the State no longer had a respective responsibility under ANILCA. Rather, the federal government became solely responsible for implementing the rural subsistence priority. This means that—at least while the State no longer implements Title VIII—the judicial enforcement provision may be used only against the federal

---

[2]     This happened after *McDowell v. State*, 785 P.2d 1 (Alaska 1989), in which the Alaska Supreme Court determined that the State could not, under state law, provide a rural subsistence preference compliant with the federal definition in ANILCA.

government when it fails to provide for subsistence users.[3] It is currently

inapplicable against the State.[4]

Relatedly, broadly interpreting § 3117 to include private lawsuits against the

State[5] when the State is no longer choosing to implement ANILCA would violate

the Eleventh Amendment. Judicial enforcement provisions, like the one in § 3117,

abrogate state sovereign immunity (and expose the State's treasury). Congress

lacks constitutional power to abrogate the states' Eleventh Amendment immunity

under the Indian Commerce Clause and any provision of Article I. *Seminole Tribe*

*of Fla. v. Fla.*, 517 U.S. 44 (1996). The only constitutional way to read the judicial

---

[3] Congress's subsequent contingent amendments further support this understanding. When Congress allowed time for the State to amend its Constitution to implement an ANILCA-compliant rural subsistence priority, it amended subsection (b) f the judicial enforcement provision to read: "State agency actions may be declared invalid by the court only if they are arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law." DEPARTMENT OF THE INTERIOR AND RELATED AGENCIES APPROPRIATIONS ACT, 1998, PL 105–83, November 14, 1997, 111 Stat 1543 (amending 16 U.S.C. § 3117). This provision has sunset. Still, it reinforces the understanding that § 3117 is a mechanism to be used against the governmental entity responsible for implementing the federal priority.

[4] In *Native Village of Quinhagak v. United States*, 307 F.3d 1075 (9th Cir. 2002), this Court authorized an award of attorneys' fees against both the State and the federal government when a village sued both governments to enforce ANILCA subsistence fishing rights. Critically, that case was about whether Quinhagak could get attorney's fees in the related cases: *Katie John/Babbitt.* This Court never addressed the argument raised in this opposition.

[5] Of course, this is not a lawsuit against the State. The State brought suit against the federal government and the Tribe did not sue under § 3117.

enforcement provision in § 3117 is for the provision to apply when the State is voluntarily implementing an ANILCA-compliant rural subsistence scheme. When Congress enacted ANILCA, it suspended federal regulations if the State voluntarily implemented Title VIII. The State voluntarily implemented Title VIII with the understanding that it could be sued by rural subsistence users and on the hook for attorneys' fees if it did not comply with Title VIII's dictates. 16 U.S.C. §§ 3115, 3117. But Congress also contemplated that the State would choose not to provide an ANILCA-compliant subsistence scheme. In such case, the State would not subject itself to suit for failing to provide for a rural subsistence priority. 16 U.S.C. § 3117. Such is the case here.

Because "the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States," *Seminole Tribe*, 517 U.S. at 72, this Court need not also address whether Congress clearly intended to abrogate state sovereign immunity in this way, *see id.* at 55–56. But it is notable that Congress did not clearly intend to abrogate sovereign immunity when the State no longer implements the priority and sues the federal government for acting outside the scope of its authority. And for Congress to subject a state to private suit, Congress must both have the authority to abrogate immunity and clearly intend to do so. *Id.* at 55. Congress did not clearly intend to abrogate immunity, nor could it.

Third, § 3117 applies only when the plaintiff sues under that provision. This is why § 3117 did not apply when the State brought suit against the Federal Subsistence Board for making a particular customary and traditional subsistence use determination under Title VIII. *See Alaska v. Fleagle*, No. 3:06CV0107-HRH, 2007 WL 9718106, at *7 (D. Alaska June 27, 2007). In that case, the district court recognized that the State brought the case under the APA, not ANILCA. *Id.* The State was "not alleging that it ha[d] been aggrieved by *the failure* of [the Federal Subsistence Board] to provide for a subsistence priority; it [wa]s alleging that is ha[d] been aggrieved because defendants provided a subsistence priority." *Id.* On appeal, this Court denied the tribal defendant-intervenor's request for attorney's fees under the judicial enforcement provision of ANILCA "because Alaska's claim ar[ose] under the APA and not ANILCA." *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1101 n.19 (9th Cir. 2008).

As was the case in 2008, the State brought this suit under the Administrative Procedure Act, not the judicial enforcement provision of Title VIII. *See* Opening Br., Dkt. 13.1 at 22 (standard of review section discussing how this case is brought under the APA). In fact, § 3117 does not authorize the State to bring suit under it. And as was the case in 2008, § 3117 fees are again not available to the intervenor-defendant. *Alaska v. Fed. Subsistence Bd.*, 544 F.3d at 1101 n.19.

11

Whereas § 3117 applies when local subsistence users sue the governmental entity responsible for effectuating the Title VIII priority because that government failed to provide for the priority, § 3117 does not apply when an entity (whether it is the State or someone else) sues the Federal Subsistence Board for acting outside the scope of ANILCA.

Not only does the plain language of § 3117 preclude the Tribe's argument, but also the structure of Title VIII supports this interpretation. When Congress passed ANILCA, it intended that the State implement the subsistence priority and it capitalized the State (up to $5 million per year) to create an advisory system to implement the priority. 16 U.S.C. § 3115(e). The federal government paid Alaska for implementing an ANILCA-compliant scheme. If local subsistence users sued the State and proved that Alaska had, for instance, misidentified the geographic scope of rural subsistence users, then the State would have to pay attorneys' fees to the rural users who successfully sued the State for excluding them. *See* 16 U.S.C. § 3117. In such instance, the State would be using federal money to implement the federal priority either on the front end (through directly providing the priority) or the back end (through indirectly providing the priority through judicial order). *See id.* § 3115(e), 3117. But once the federal government took over implementing the priority—determining who is entitled to a priority for which stocks of wildlife, identifying those people's uses and needs, and restricting other uses when

12

necessary—it used its own funds to both implement the priority and defend its decisions in executing the priority.

Finally, this case is unlike the district court decision in the *United States v. Alaska*, in which that court concluded that plaintiffs-intervenors may seek attorneys' fees under § 3117 when they sue the State for taking actions that obviate the subsistence priority. 22-CV-00054, 2024 WL 2862086 (D. Alaska June 6, 2024). In that case, after the Federal Subsistence Board opened fishing on the Kuskokwim River to federally qualified subsistence users for a number of days, the state opened fishing on those same days to non-federally qualified subsistence users. 2024 WL 1348632, *4–5 (D. Alaska Mar. 29, 2024), pending appeal in 24-2251 (9th Cir.). The issue in that case involves whether the Board's fishing opener preempted the State's opener, which depends on the geographical limits of the Board's jurisdiction over waters. After the State filed a notice of appeal of the merits of the district court decision, the plaintiffs-intervenors sought attorneys' fees. The district court determined that the plaintiffs-intervenors may seek attorneys' fees pending the final outcome of the litigation. 2024 WL 2862086, *4 (D. Alaska June 6, 2024).

Notably, the district court's decision interpreting § 3117 in *United States v. Alaska* is neither final nor precedential. It is not final because the district court has not actually awarded any fees, deferring such a decision until after the appeal in

13

that case. *Id.* at *4. If the State wins on appeal, the plaintiffs-intervenors will not be the prevailing party and will receive no fees. If the State loses and if the district court awards fees, the State will likely appeal. Nor should this Court follow the district court's nonprecedential decision, which is erroneous for many of the reasons discussed above.

But even if § 3117 could be construed so broadly to award attorneys' fees when the federal government or local subsistence users bring suit against the State because the State took an action obviating the subsistence priority that the Federal Subsistence Board implemented, that does not translate to an award of fees here. In this case, the State sued to protect its ability to effectively manage wildlife within its borders when the Board provided a priority.[6] Fee-shifting provisions like the one in § 3117 encourage plaintiffs to bring suit to vindicate their otherwise unimplemented rights because attorneys are expensive and potential litigants might not otherwise bring suit. *Native Vill. of Quinhagak v. United States*, 307 F.3d 1075,

---

[6]     The Tribe did not, for instance, seek a potlatch hunt from the State, which would have given the State the opportunity to gather critical data necessary for holistically managing wildlife. *See* 5 AAC 92.053 (authorizing taking of three moose annually for a particular potlatch and requiring certain reporting); 5 AAC 92.017 (authorizing taking of big game outside hunting season for a particular potlatch ceremony and requiring certain reporting). The Tribe instead sought an emergency hunt from the Federal Subsistence Board, which does not require the same type of data sharing. This circumvention of state management makes it more difficult for the State to effectively manage wildlife.

1083 (9th Cir. 2002); *see also* 126 Cong. Rec. S31109 (Dec. 1, 1980) (discussing

"effective implementation of the subsistence priority by both the State and the

federal government" and the importance of the fee-shifting provisions to "residents

of Native Villages, many of which are among the poorest communities in the

Nation" when they file an action pursuant to § 3117). That rationale disappears

when the Department of Justice adeptly participates in the case and defends the suit

on behalf of the subsistence users. *See Donnell v. United States*, 682 F.2d 240, 246

(D.C. Cir. 1982) (holding same in the context of civil rights cases). The fee-

shifting provision is not intended to chill legitimate State lawsuits challenging the

scope of federal authority.

## II.    Even if authorized, the fees sought are not reasonable.

To the extent this Court disagrees with the analysis above, many of the fees

sought are unreasonable and this Court should refer the facts to an Appellate

Commissioner for further analysis. Court Rule 39.1-9.

As an initial matter, "[a]wards to intervenors should not be granted unless

the intervenor plays a significant role in the litigation." *Grove v. Mead Sch. Dist.

No. 354*, 753 F.2d 1528, 1535 (9th Cir. 1985). An intervenor is not entitled to fees

for duplicative arguments that the defendant made. *See Donnell*, 682 F.2d at 249

(discussing how it would be inappropriate to award attorneys fees to intervenors'

work that is "mostly redundant of the Government's"); *Milicevic v. Fletcher Jones*

*Imports, Ltd*., 402 F.3d 912, 920 (9th Cir. 2005) (affirming district court's decision that "eliminated hours it thought were unnecessarily duplicative"). And a party is not entitled to fees for arguments upon which it did not prevail. *Hardisty v. Astrue*, 592 F.3d 1072, 1077 (9th Cir. 2010) (refusing to award fees with respect to positions "unaddressed by the reviewing court").

There is only one argument the Tribe raised and that this Court favorably addressed, which is not duplicative of the federal government's briefing: the Congressional ratification argument. Kake Br. 20-28 (Dkt. 31.1). Otherwise, the Tribe repeated the facts and summarized the federal arguments. Kake Br. 1-20, 29-31 (Dkt. 31.1). The Tribe also argued the merits of the improper delegation argument, but it did not prevail on that issue. Kake Br. 29-31. (This Court did not address it.) Because most of the Tribe's spreadsheets of time accounting do not differentiate which communications, research, drafting, and editing relate to each argument, or the spreadsheets expressly redact which arguments attorneys were working on and when—*see, e.g.*, Exh. 1, p. 1–3, 6–7 (Dkt. 55.3)[7]—there is no way to differentiate between issues the Tribe worked on that are duplicative of the federal government's arguments or relate to issues on which the Tribe did not prevail. And it is unreasonable to bill about $150,000 in attorneys' fees (and over

---

[7]     Ms. Condon's spreadsheet does differentiate between some issues, at times. *E.g.*, Exh. A p. 1 (Dkt. 55.2) ("re-read district court opinion re delegation").

16

300 hours of time) to augment briefing to include a simple congressional ratification argument. Undersigned counsel spent much less time (227 hours) drafting two briefs and a petition for rehearing and participating in oral argument on many more arguments within this case.

Moreover, while it is not per se unreasonable to have multiple attorneys, multiple attorneys doing the same work and conferencing about the same issues raises the concern that billed time is unnecessary. That is the case here. This is especially true because two separate organizations—each with several attorneys— represented the Tribe. Much of the time billed is for communications between the organizations, coordinating extensions and timing, and keeping each other apprised of what the other was doing. To take just one clear example of unnecessary billing by multiple attorneys, three attorneys billed for the oral argument. While it is reasonable for the attorney arguing a case to bill for oral argument, it is not reasonable for other attorneys to bill for remotely watching it. *See, e.g.*, Exh. 1, p. 11 (Dkt. 55.3); Exh. A, p. 3 (Dkt. 55.2).

Granted, not all the fees the Tribe seeks went towards the merits of the appeal. Over 50 hours were spent on the attorneys' fees motion. Exc. A, pp. 3, 6–7, 10–11 (Dkt. 55.2); Exh. 1, pp. 8–10, 12 (Dkt. 55.3). But an intervenor cannot bootstrap an appeal to a fees motion for the purpose of gaining fees.

17

The rates are also unreasonable. According to a 2018 State of Alaska study of market rates in Alaska, entry-level attorneys typically bill $150/hour, junior attorneys warrant $200/hour, more senior warrant $250/hour, and the most senior and supervisory attorneys warrant $300/hour. *See* Attached Decl. Although this study is not from 2024, when this appeal was litigated, that does not mean rates have nearly doubled in the past six years. Rates over $400 are unreasonable for the Alaska market. *See Johnson v. Barber & Assocs.*, 2025 WL 417786 (D. Alaska Feb. 6, 2025) ("In recent years, federal and state courts in Alaska have found rates ranging from $275 to $400 per hour to be reasonable to Alaska attorneys, depending on their years of experience and the subject matter."). And a rate of $200/hour for a law student whom the Tribe describes as a law clerk is likewise unreasonable. *Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) (finding rate of $75 per hour for law students interns to be reasonable); *Ros v. Benavidez*, No. 6:21-CV-00739-HZ, 2024 WL 139866, at *5 (D. Or. Jan. 11, 2024) (same).

## CONCLUSION

In sum, the Tribe is not entitled to any attorneys' fees. And if any fees are awarded, they should be significantly reduced.


RESPECTFULLY SUBMITTED August 15, 2025.

STATE OF ALASKA
TREG TAYLOR

18

ATTORNEY GENERAL


*s/Laura Wolff*

By: Laura Wolff
Assistant Attorney General
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
(907) 269-6612 phone
(907) 276-3697 fax

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| State of Alaska Department of Fish and Game, | ) ) No. 24-179 ) |
| Appellants, | ) ) D.C. No. 3:20-cv-00195-SLG |
| v. | ) ) |
| Federal Subsistence Board, et al., | ) ) |
| Appellees | ) ) ) |

**DECLARATION OF LAURA WOLFF**

I, Laura Wolff, declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct to the best of my knowledge:

1.  I am a senior attorney at the Department of Law, classified as an Attorney V.

2.  I have been practicing law since graduating from an elite law school in 2013.

3.  Similar to declarations regarding the more senior opposing counsel, I have worked for the Alaska state court system and also for a federal appellate court, been an adjunct professor at a law school, worked for a

top-tier national private firm, and have extensive appellate and Indian law experience in both state and federal courts.

4. When I seek attorneys' fees in litigation, I seek $300 per hour, which is the highest rate Alaska Department of Law attorneys seek in fees motions. This hourly rate is based on the Attorney General's approval in 2018, after a market study.

5. The hourly rates the State of Alaska currently uses are: $150 for entry-level attorneys, $200 for junior attorneys, $250 for journey-level attorneys, $300 for the most senior attorneys, and $125 for paraprofessionals.

6. This fee scale was based on recommendations of a working group tasked with assessing the Department of Law's policy on attorney's fees requests. The working group has periodically reviewed attorney billing rates statewide, including the rates charged by other governmental agencies, the fees paid by the State of Alaska to experienced private practitioners who provide legal services to the State, and the hourly rates charge by private practitioners in Alaska.

7. I am the assigned attorney in this appeal. Excluding the approximate three days I spent drafting this opposition, I spent 227 collective hours reviewing the district court case file, researching numerous issues and

subissues related to this appeal, researching legislative history, communicating with clients, communicating with colleagues who reviewed the draft briefs, drafting the opening brief, reviewing DOJ and Kake's responsive briefs, drafting a reply brief, editing briefs, compiling the excerpt, drafting the petition for rehearing, drafting other miscellaneous filings, preparing for and participating in a moot court, and preparing for and participating in oral argument.

RESPECTFULLY SUBMITTED August 15, 2025.

<u>*s/Laura Wolff*</u>
By:  Laura Wolff
      Assistant Attorney General
      1031 West Fourth Avenue, Ste. 200
      Anchorage, AK 99501
      (907) 269-6612 phone
      (907) 276-3697 fax

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that I electronically filed the foregoing opposition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 15, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

This pleading's type size and typeface comply with FRAP 32, and the word limit in FRAP 27. The opposition contains 4,226 words, excluding items exempted by FRAP 32 and the accompanying declaration.

*s/Laura Wolff*